Anthony T. LEE et al., Plaintiffs-Appellants,

United States of America, Plaintiff-Intervenor-Appellant,

National Education Association, Plaintiff-Intervenor,

v.

MACON COUNTY BOARD OF EDUCATION, Defendants,

City of Tuscaloosa School System, Defendants-Appellees,

City of Anniston School System, Defendants-Appellees.

No. 29584.

United States Court of Appeals, Fifth Circuit.

July 15, 1970.

Solomon S. Seay, Jr., Fred D. Gray, Ira DeMent, U. S. Atty., Montgomery, Ala., Jack Greenberg, James M. Nabrit, III, Norman J. Chachkin, Charles Becton, New York City, Jerris Leonard, Asst. Atty. Gen., David L. Norman, Deputy Asst. Atty. Gen., Brian K. Landsberg, David D. Gregory, Robert Pressman, Attys., Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., for plaintiffs-appellants.

Walter J. Merrill, Anniston, Ala., Martin Ray, Tuscaloosa, Ala., T. W. Thagard, Jr., Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, Ala.,

Gordon Madison, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendants-appellees.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

There are before us for consideration in the captioned matter two separate appeals involving orders of the three-judge District Court (composed of Senior Circuit Judge Richard T. Rives and District Judges H. H. Grooms and Frank M. Johnson, Jr.) pertaining to desegregation of the school systems of the Alabama cities of Tuscaloosa and Anniston, and to plans which are to be effective in the forthcoming 1970-71 session.[1] As originally filed in 1963, the suit of plaintiffs was before a single judge who ordered desegregation of the Macon County, Alabama Public Schools beginning with the 1963-64 school year. Thereafter, in February 1964, certain Alabama state officials were joined as defendants and a three-judge court above named was empaneled in this case to consider the validity of Alabama's tuition-grant statute. See 231 F.Supp. 743, Middle District of Alabama, 1964. Additional parties were added from time to time. On August 31, 1966, the United States was granted permission to intervene and file a supplemental complaint. The City of Anniston's School System was added as a defendant on July 15, 1969. The City of Tuscaloosa's School System was added as a defendant on August 25, 1969.

An evidentiary hearing was held in the Anniston case on March 6, 1970 by the three-judge District Court, with testimony only from Board witnesses, resulting in an order of that court on March 16, 1970 (modified March 23, 1970) approving a plan of desegregation for the School System. An evidentiary hearing was held in the Tuscaloosa case on March 13, 1970, with testimony only from a Board witness, resulting in an order on March 26, 1970 approving a plan of desegregation for the School System.

By order dated March 31, 1970, pursuant to 28 U.S.C. § 1404(a), the three-judge District Court transferred the Anniston and Tuscaloosa cases, as well as a large number of other school cases in Alabama, which it had been overseeing for a number of years (at one time over 100 school districts), to the jurisdiction of the respective United States District Courts in Alabama in which the School Systems were geographically situated; in the present cases, of Anniston and Tuscaloosa, to the United States District Court for the Northern District of Alabama.[2] In 45 cases final orders of the three-judge court have been entered and no appeals taken, other cases are now under sub-

---

1. Under the stringent requirements of Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed. 2d 19 (1969), which this Court has carried out in United States v. Hinds County School Board, 5 Cir., 1969, 417 F.2d 852, and of Carter v. West Feliciana Parish School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970), implemented in Singleton v. Jackson Municipal Separate School District, 5 Cir., 1970, 419 F.2d 1211, this Court has judicially determined that the ordinary procedures for appellate review in school desegregation cases have to be suitably adopted to assure that each system whose case is before us "begin immediately to operate as unitary school systems." Upon consideration of the parties' memoranda and so much of the record as is available or determined to be needed by the Court, the Court has pro-

ceeded to dispose of this case as an extraordinary matter. Rule 2, F.R.A.P.

2. The orders appealed from are those of the three-judge District Court, i. e., the order of that Court dated March 16, 1970 (modified March 23, 1970) in the Anniston case, and the order of that Court dated March 26, 1970 in the Tuscaloosa case. It is appropriate that these appeals from the three-judge District Court be heard by this Court of Appeals which has jurisdiction rather than the Supreme Court, since there are no procedings here concerned with the constitutionality of a state statute, and no 28 U.S.C. § 2281 issues involved. See 28 U.S.C. § 1291; 28 U.S.C. § 1253. Cf. United States v. State of Georgia, et al. (Charlie Ridley, Jr., et al., Intervenors), 5 Cir., 1970, 428 F.2d 377.

mission, and others are pending awaiting completion of the record. (See Gov. brief p. 22.)

The unitary, desegregated character of the School System as to faculty, staff, facilities, etc., is not questioned here, the appeals being directed only to the question of student assignment.

## ANNISTON

Anniston is situated in Calhoun County in northeast Alabama. It has 15 schools, with a total of 7,109 students, of whom 3,839 are white and 3,270 are black.

The three-judge District Court adopted the School System's Elementary School and High School Plans, which basically were developed by HEW with modifications by the Board, in preference to the HEW plan. The plans accepted are based on geographic zoning and residential proximity. Originally both HEW and the Board planned to close Cobb High, the formerly all Negro high school, and convert it to an elementary school. However, strong protests from the Negro community against the closing of Cobb resulted in reconsideration by the Board and the proposing of a plan by the Board which was approved by the District Court and which would keep Cobb as a high school, the Court finding that "the closing of Cobb High School as a part of the Anniston Public School System will not be educationally and administratively sound." Thus under the Board's plan Cobb would remain open for grades 7-12. The Board proposed a geographic zone by drawing a north-south line approximately midway between Cobb, which is in the western zone, and Anniston High and Old Anniston High Schools, which are in the eastern zone. Old Anniston High, built in 1923, would be used for one more year. Said by the Board to be "a block and a half of valuable property," the Board proposed to sell it for approximately $650,000 (see Board brief p. 8), to obtain funds for further school needs, and New Anniston High would thereafter be the sole high school in the eastern zone.

It is contended that closing of Cobb as a high school and pairing of the other secondary schools (as HEW suggested) would produce a preferred racial balance of students, but we believe the District Court properly and more reasonably adopted the alternative of two geographic zones and keeping Cobb open as a high school.

As indicated, HEW's plan would have converted Cobb from a high school to an elementary school and would also close South Highland, Cooper and Twelfth Street Elementary Schools.

Plaintiffs objected to the HEW plan as "failing to disestablish racially identifiable elementary schools," and suggested pairing Noble Street and Twelfth Street; Tenth Street, Woodstock, and Highland; and Norwood, Cooper and Randolph Park Elementary Schools.

The Board's Elementary School Plan (for grades 1-6, involving the younger and smaller children) is based on geographic zones and apparently no serious objection was made as to the geographic soundness thereof.

The three-judge District Court in refusing to close Cobb as a high school and convert it to an elementary school, and in approving the Board's plan, necessarily rejected HEW's companion idea of closing three elementary schools. Those schools are obviously needed and the uncontradicted testimony of Dr. Layton, Superintendent of Schools, so disclosed. Their closing, according to the testimony, would tax and crowd the System's facilities, and cause elementary students to travel much greater distances, and cross busy intersections and railroad tracks to get to school. The Court's failure to adopt the broad ideas for pairing suggested by plaintiffs, reflected a view, which we can clearly see from studying the geographic zone maps, that the distances were too great and the schools too remote to merit consideration. The System has no buses, but contracts with a local transit company for use of some buses, providing transportation by free passes for students who live at least two miles from their school. The Board's

plans and its zoning are much more practical and feasible.

## TUSCALOOSA

Tuscaloosa is located in west central Alabama. The school district maintains 20 schools, with a total of 13,496 students, of whom 7,453 are white and 6,043 are black.

The three-judge District Court adopted the School Board's Elementary School Plan and its Senior High School Plan; it also adopted HEW's Junior High School Plan, in preference to the Board's plan, and over the Board's objections, and this latter portion of the Court's order is not disputed in this appeal. The plans adopted are based on geographic zoning and residential proximity.

The School Board's Senior High School Plan divided Tuscaloosa between the two high schools, Tuscaloosa High (which was predominantly white) and Druid High (which was all Negro), and are both located on Fifteenth Street, some 22 blocks or approximately one and one-half miles apart. A line was drawn approximately equidistant between the two high schools in an approximate north-south direction along Greensboro Avenue to the A.G.S. Railroad tracks, thence down the railroad line to the city limits. The District Court modified the School Board Plan by directing that it traverse Greensboro Avenue all the way to the city limits in lieu of a portion thereof following the A.G.S. Railroad line. The line of the HEW plan was also in a north-south direction but nearer to the Druid High School, thence at a right angle in an easterly direction to the city limits.

It is obvious that the HEW plan gave little consideration to residential proximity and that many students, white and black, would be required to cross town at great distances, traversing railroad and switchyard tracks, whereas under the School Board Plan geographic considerations were more realistic and practical.

As to the Elementary School Plan (grades 1–6), there is little dispute about the basic fairness of the geographic school zones drawn by the Board but HEW's plan would modify the Board's plan to pair predominantly white Oakdale School with predominately black Stillman Heights School; and predominantly black Seventeenth Street with predominantly white University Place. To this the plainiffs would add the pairing of Central Stafford and Verner elementary schools.

Little consideration is given to geographic proximity in the proposed pairing of Oakdale-Stillman Heights elementary schools. Many of the students walk to school. Oakdale is a large zone territorially and elementary students living in the southwestern portion thereof would have to traverse great distances to reach Stillman Heights School, most being compelled to walk along U. S. Highway 11. Elementary students living in the upper half of Stillman Heights zone would likewise traverse considerable distances and be compelled to use U. S. Highway 11 to reach Oakdale.

In the Seventeenth Street-University Place elementary school pairing, most students would be required to walk considerable distances further to attend these schools than would be necessitated within the zones themselves and the District Court properly declined to adopt them. Seventeenth Street School would also be over capacity as to students, with 389 students in a school of 375 student capacity.

The plans adopted by the District Court were sounder and more practical than any of the others recommended and were made in the exercise of a reasonable discretion based on considerable expertise in dealing with numerous school desegregation cases.

## DISCUSSION

It is unquestioned that the racial identification of the Anniston and Tuscaloosa city schools has been eliminated in all the particulars specified in Green v. County School Bd. of New Kent Co., Va., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed. 2d 716 (1968), *see also* Ellis v. Board of

Public Instruction of Orange Co., Fla., 5 Cir., 1970, 423 F.2d 203, with the exception of student desegregation.

As the Supreme Court pointed out in *Green,* 391 U.S. 430, 439, 88 S.Ct. 1689, 1695, "There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance."

■ Thus we have carefully examined the facts and circumstances in these two cases, thoroughly considered the records of testimony which are not long, and studied the zone maps submitted by the School Boards.

There are large areas of agreement between the parties, and some of substantial disagreement. That full desegregation by the plans accepted by the three-judge District Court is the end result as to faculty, staff, facilities, etc., is uncontested. For example, as to faculty, each school will have a teaching staff with a ratio in each school the same as it is for teachers in the entire system— which means that in each school in these systems a majority of the teachers will be white.

The plans accepted by the Court here, insofar as student assignment is concerned, are based on geographic zones and residential proximity. The record shows very clearly that uniform criteria were employed by the two Boards to draw zones which would permit every child to attend the school nearest his home, and to provide optimum use of existing facilities. There were no variances and a strict neighborhood system, based on school capacity, has been observed without exception. *See* Ellis v. Board of Public Instruction of Orange Co., Fla., 5 Cir., 1970, 423 F.2d at 207– 208.

The objection by appellants is that the three-judge District Court did not select plans which would maximize integration. But in our view, assessing the matters "in light of the circumstances present and the options available in each instance," Green v. County School Bd. of New Kent Co., Va., *supra,* the Court below adopted those plans which give the maximum possible desegregation that is feasible. Cf. Carr, et al. v. Montgomery County Board of Education, 5 Cir., 1970, 429 F.2d 382; Hightower v. West, 5 Cir., 1970, 430 F.2d 552.

In Anniston, all schools would be integrated except four all white elementary schools, mostly in outlying areas of the city in all white neighborhoods. (HEW's plan would integrate all but two all white schools.)

In Tuscaloosa, all schools would be integrated except two all white elementary schools and one with 651 whites and 3 blacks. (HEW's plans is identical as to these three schools.)

We are impressed from the record that the geographic zones finally adopted are the best possible—in many instances they were developed by HEW itself. The three-judge District Court from which these appeals come has been busily engaged for nearly six years in a conscientious effort to desegregate Alabama's public schools. Its success in that regard is undeniable and is conceded by appellants. In the present cases the Court showed that it knew these School Systems well, having had Anniston, for example, under its careful surveillance for several years. As Judge Frank Johnson expressed it on the hearing of the Anniston case, "the members of this court have been dealing with the Anniston School System for several years now, we are very thoroughly familiar with the racial patterns and the effects of these lines, and we have just conferred here at the bench, and we understand all this matter * * *." Tuscaloosa's case has been before this District Court since 1966 and as Senior Circuit Judge Richard T. Rives expressed it during the hearing, the System has been "under supervision of this Court all that time * * *."

We are unable, after careful and thorough scrutiny, to say that the three-

judge District Court exercised an unwise discretion in its disposition of these two cases. The plans submitted were first discussed informally in chambers with the parties, and then reviewed again, as modified, in a formal hearing. The only evidence submitted in each case was that of the School Boards, and no contradictory or opposing testimony was adduced, appellants relying on cross-examination of the witnesses, and the legal contentions they have urged to this Court. In our view, the District Court did not err, but adopted plans which will fully integrate these School Systems under the *Green* criteria, and convert them to unitary, nonracial systems.

Affirmed.