454 F.2d 839
 Vivian SPENCER, an infant by her Guardian ad Litem, Nancy
Spencer, Appellant in No. 19257, and Geraldine
Chavis, an infant by her Guardian ad
Litem, Vance Dunlop Chavis,
Appellants in No. 71-1876,
v.
George F. KUGLER, Attorney General of New Jersey; Carl
Marburger, Commissioner of Education and the State
Board of Education of the State of New
Jersey (two cases).
Appeal of Geraldine CHAVIS, an infant by her Guardian ad
Litem, Vance Dunlop Chavis, No. 19258.
 Nos. 19257, 19258 and 71-1876.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 9, 1971.
Decided Jan. 24, 1972.
 
 Harold J. Ruvoldt, Jr., Ruvoldt & Ruvoldt, Jersey City, N. J., for appellants.
 Stephen G. Weiss, Greenwood & Weiss, Wayne, N. J. (George F. Kugler, Jr., Atty. Gen. of N. J., on the brief), for appellees.
 Before McLAUGHLIN, ALDISERT and JAMES ROSEN, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 This appeal[1] presents the narrow question whether a single district judge properly dismissed a count in a complaint requesting, inter alia, that New Jersey file a public school plan free of "racial imbalance." After a three-judge statutory court, 326 F.Supp. 1235, dismissed a second count in the same complaint, which requested the same relief but also sought an injunction against the enforcement of certain statutes and a judicial declaration of their unconstitutionality, the single judge incorporated the reasoning of the statutory court in dismissing Count One.
 
 
 2
 Plaintiffs' complaint alleged that the New Jersey public schools are racially imbalanced, thus constituting de jure segregation outlawed by Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The ultimate relief sought was immediate statewide redistricting. The procedural vehicles utilized by the plaintiffs have given rise to this appeal.
 
 
 3
 Although somewhat inartfully drawn, Count One contends generally that the school system is racially imbalanced and prays that the defendants be ordered "to file with this Court a plan (a) to correct the racial imbalance of the schools in the state of New Jersey at the start of the semester immediately after the entry of judgment therein, and (b) to provide compulsory education . . . and/or to provide funds for such purposes." Count Two, a request for a convocation of a three-judge court, avers that the imbalance results from N.J.S.A. 18A:8-1 to 8-42 and N.J.S.A. 18A:38-1 to 38-24,[2] seeks a judgment declaring their unconstitutionality, requests an injunction against enforcement, and essentially asks for the same affirmative mandatory relief sought in Count One.
 
 
 4
 Count Two is not before us. At oral argument appellants explicitly stated that these appeals relate only to the denial of relief sought from the single judge in Count One. A three-judge court denied the relief requested in Count Two and appellants have lodged a direct appeal from that determination to the Supreme Court. 28 U.S.C. Sec. 1253.[3]
 
 
 5
 Basically, the argument advanced on this appeal is that this court has jurisdiction to entertain an appeal from the decision of the single judge because the relief requested was for a declaratory judgment, and not an injunction, and that according to Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), this court, and not the Supreme Court, has jurisdiction to hear an appeal from a denial of a request for a declaratory judgment. But the issue here is not appealability; indeed, that point is not in controversy. Instead, the more difficult question presented is whether the single district judge properly dismissed Count One for the reasons stated by the statutory court in dismissing Count Two and incorporated by him as the justification for his action.
 
 
 6
 So postured, appellants' argument creates the critical threshold problem of denominating Count One of the complaint. Appellants' appellations notwithstanding, four possibilities inhere in the rather vaguely-couched language of Count One:[4] (1) as a request for particular mandatory relief, it may simply be an equitable prayer which, despite its evanescent constitutional overtones, does not rise to constitutional dimension; (2) it may be viewed, as appellants urge, as a request for a declaratory judgment based on alleged impairment of federal constitutional rights; (3) it may be deemed to seek an injunction against the enforcement of New Jersey educational districting statutes, on the ground that these statutes contravene plaintiffs' constitutional rights; (4) it may be a combination of any of these three procedural vehicles.
 
 
 7
 *****
 
 
 8
 * * *
 
 
 9
 *****
 
 
 10
 * * *
 
 I.
 
 11
 Accepting arguendo appellants' contention that Count One amounts to a request for a declaratory judgment, we cannot agree with the conclusion that Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), mandates that the claim be resolved by a single district court judge.[5] Perez involved a local obscenity ordinance in which a three-judge court "recognized that 'it is not the function of a three-judge federal district court to determine the constitutionality or enjoin the enforcement of a local ordinance,' [but] the court nevertheless seized the 'opportunity to express its views on the constitutionality of the ordinance."' Perez, supra, 401 U.S. at 85, 91 S.Ct. at 677. All Perez concluded was that "[t]here is considerable question concerning the propriety of issuing a declaratory judgment against a criminal law in the circumstances of this case." Id., at 85-86, 91 S.Ct. at 677. Indeed, in Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), decided the same day as Perez, the Court held that, at least as to federal intervention in pending state criminal proceedings, considerations underlying the grant or denial of declaratory judgments are the same as those on which the issuance vel non of an injunction is based.[6] See Scott v. Hill, 449 F.2d 634, 641 (6th Cir. 1971).
 
 
 12
 Prior to Samuels, the distinctions between an injunction and a declaratory judgment had been well-delineated:
 
 
 13
 [A] request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute. We hold that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction.
 
 
 14
 Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444 (1967).[7]
 
 
 15
 The extent to which Samuels modifies Zwickler is not yet clear. We conclude that at the least, conceptualizing the distinction between injunctive and declarative relief is in a dynamic, developmental process; and that at the most, the majority pronouncement of the Supreme Court in Samuels suggests that where the relief sought by declaratory judgment will require a subsequent injunction to "protect or effectuate" that judgment, there is, in reality, no practical reason to differentiate between the injunctive and declaratory remedies because the practical effects of the two remedies are identical-the disruption of the enforcement by a state of its statutes. In the view we take of this case, however, we need not attempt to resolve this issue.
 
 
 16
 In this court appellants have explicitly impressed an injunctive label on the relief sought. Their notice of appeal states that the appeal to this court is from the "whole of the order . . . whereby plaintiffs' Motion for Summary Judgement was denied and the Order to Show Cause previously granted, was discharged pursuant to 28 U.S.C. 1292(a) (1) since both the Order to Show Cause and the Motion for Summary Judgment sought affirmative injunction relief albeit-eo-nomine."
 
 
 17
 Moreover, in this appeal from the single judge order, appellants have specifically requested from this court immediate and affirmative, coercive and emergency, extraordinary relief against the New Jersey state officials. On September 14, 1970, appellants presented a petition in which they described the relief sought in Count One as that "in the nature of, albeit not denominated, affirmative injunctive relief" and that this cause be set down for "an immediate hearing so as to afford the petitioner to stop the harm to which they are being subjected, which is irrepairable [sic] . . . ." On April 7, 1971, they again moved this court "to grant an emergency hearing and to issue a preliminary injunction pending this appeal, directing the defendants herein to draw a desegregation redistricting plan for the State of New Jersey."
 
 
 18
 Faced with the plain language of Count One and appellants' repeated denomination of their own proceeding, we conclude that the relief requested was injunctive in nature. Of course, the affirmative injunctive relief sought in Count One, unlike the precise prayer in Count Two, may be considered a Sec. 1983 action alleging unconstitutional application by state officials of otherwise constitutional statutes; so construed, the count may not arise to a constitutional assault on the statutes in question sufficient to activate Sec. 2281. As the Supreme Court noted in Phillips v. United States, 312 U.S. 246, 252, 61 S.Ct. 480, 484, 85 L.Ed. 800 (1941):
 
 
 19
 Some constitutional or statutory provision is the ultimate source of all actions by state officials. But an attack on lawless exercise of authority in a particular case is not an attack upon the constitutionality of a statute conferring the authority even though a misreading of the statute is invoked as a justification. At least not within the Congressional scheme of [Sec. 2281].[8]
 
 
 20
 In such cases, these claims are properly viewed as pendent to the claims challenging unconstitutionality of statutes and, as such, they may be resolved by the single-judge district court. Rosado v. Wyman, 397 U.S. 397, 402-405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Bryant v. Carleson, 444 F.2d 353, 358 (9th Cir. 1971). In Florida Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960), the Court held that the presence of a nonconstitutional claim did not obviate the requisite convention of the three-judge court. Moreover, the Court stated that
 
 
 21
 in an injunction action challenging a state statute on substantial federal constitutional grounds, a three-judge court is required to be convened and has-just as we have on a direct appeal from its action-jurisdiction over all claims raised against the statute.
 
 
 22
 Florida Lime Growers, supra, 362 U.S. at 80-81, 80 S.Ct. at 573.[9]
 
 
 23
 Thus, only challenges to the validity of the statute itself are beyond the discretionary purview of the single-judge district court and must be submitted to the three-judge panel. Landry v. Daley, 288 F.Supp. 194, 197 (E.D.Ill.1968).[10] Though cogent reasons have been suggested for submitting all pendent claims to the three-judge court,[11] the practice is not always followed.[12]
 
 
 24
 Whether the injunctive relief sought by appellants in Count One amounts to a challenge to the New Jersey education statutes themselves, or is simply a challenge to the application of these statutes, then, determines whether the issue be submitted to the three-judge court. The distinction is not always easily drawn.[13] The complaint here has the potential of being interpreted as alternative attacks, with Count One assuming the constitutionality of the statutes and alleging unconstitutional application thereof by state officials to the detriment and deprivation of the plaintiffs and Count Two constituting a frontal attack on the statutes. So construed, there would be no jurisdictional or procedural bar to separate consideration by a single judge of Count One and by the statutory court of Count Two.
 
 
 25
 However, under the circumstances of this case, we need not determine the propriety vel non of the separate treatment by separate trial courts. For the reality here is that no actual segregation of counts was made. Plaintiffs expressly incorporated by reference the allegations of Count One in Count Two. And Count One was considered both by Judge Wortendyke as a single-judge district court, and by the three-judge panel. Thus, the practice implemented here-the identical disposal of claims by a three-judge panel and a single judge-amounts to no more than an infrequent practice employed by the courts when the constitutional magnitude of the action is conjectural, which the Supreme Court has described as a "procedure for minimizing prejudice to litigants when the jurisdiction of a three-judge court is unclear," Swift & Co. v. Wickham, 382 U.S. 111, 114, n. 4, 86 S.Ct. 258, 260, 15 L.Ed.2d 194 (1965); see also, Query v. United States, 316 U.S. 486, 488, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942). As these cases recognize, the decision to convene a three-judge court and the delineation of issues to be submitted to it are abstruse matters frequently admitting of little procedural precision. We will not deny our imprimatur to the action of a district court which, "out of abundant caution," Swift & Co. v. Wickham, supra, 382 U.S. at 114, n. 4, 86 S.Ct. 258, 15 L.Ed.2d 194, has merely attempted to assure that the litigants will be detoured around no procedural avenue.
 
 
 26
 Appellants are entitled to no more than one forum in which to have their complaint aired. Absent its appellation, all of Count One was considered by the three-judge court. There were no issues to be considered and no adjudication to be made by the single judge which were not before the statutory court and adjudicated by it. It is not necessary for our purposes to affix precise nomenclature to the effect of the statutory court adjudication of Count One, but we are hard pressed not to suggest that the circumstances fit the classic mold of res judicata. That adjudication by the three-judge court is presently under review by the Supreme Court of the United States.[14] In sum, we hold that because appellants were in no way harmed by the district court's dismissal of a previously adjudicated matter we can find no reversible error in the action below.
 
 II.
 
 27
 Moreover, we perceive in the history of this case a problem which, in its effect on court administration, may transcend in gravity even the momentous subject matter underpinning appellants' actions. School desegregation cases are complex and multifarious. They frequently require the protracted assertion of broad equity power by the judiciary. See Swann v. Charlotte-Mecklenburg v. Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). As such, we view as particularly pernicious the possibility of parallel proceedings created by appellants' cause of action.
 
 
 28
 Though, as we have heretofore rehearsed, we recognize the occasional legitimacy of segregating claims between single-judge courts and three-judge courts, the effect of such a practice here -where the first claim is incorporated in the second-is to permit simultaneous consideration by two federal courts, replete with two avenues of appeal.[15] We consider such a situation to be appropriate for the application of the doctrine of comity.
 
 
 29
 We are not unaware, of course, that comity is a concept which is more commonly applied either in an international law setting,[16] or as a basis on which a sovereign state declines to exercise its jurisdiction in deference to the action of another.[17]
 
 
 30
 But the principles underlying this doctrine have equal cogency in the present context. As the court noted in Florida v. United States, 285 F.2d 596, 604 (8th Cir. 1960), "[h]ere the conflict is between federal courts alone. Courts are not required by law to forbear but may do so as a matter of comity and to avoid duplicate litigation. Kline v. Burke Constr. Co., 260 U.S. 226 [43 S.Ct. 79, 67 L.Ed. 226]; Covell v. Heyman, 111 U.S. 176 [4 S.Ct. 355, 28 L.Ed. 390]."[18]
 
 
 31
 Even absent the peculiarly undesirable possibility of conflicting results, we can think of no justification for simultaneous consideration by two district courts of a matter so taxing on court resources as is a request for the submission of a desegregation plan. Once the matter was submitted to the three-judge court, efficient judicial administration dictated that the single-judge decline to entertain a count encompassing an identical claim. Thus, even if this matter be one of comity only, we hold that where a three-judge court is convened, a single district court judge in this circuit should decline to entertain a count containing a request for identical relief to that requested of and submitted to the three-judge court.
 
 III.
 
 32
 The difficult issues presented by this case emphasize the necessity for reexamination by Congress of statutory court procedures on both the trial and appellate levels. We have demonstrated that it is theoretically possible for a challenge to the constitutionality of state statutes to proceed simultaneously along two routes at the district court level- before a single judge by way of a request for declaratory relief and before a statutory court by way of the injunction route. It is also theoretically possible for different results to emerge from the separate trial courts. Similarly, we have shown that present appellate processes give jurisdiction to Courts of Appeals from single-judge determinations of declaratory judgments, other Sec. 1983 judgments, and, in certain cases, statutory court declaratory judgments. The Supreme Court has jurisdiction in appeals from granting or denying injunctions by statutory courts. It is therefore possible that two separate appellate courts can simultaneously have before them identical issues from statutory courts. And this problem has become exacerbated by the Samuels decision which has narrowed the distinction between declaratory and injunctive remedies. The American Law Institute Study, Proposal Sec. 1374, now incorporated as part of the proposed Federal Jurisdiction Act of 1971,[19] S 1876, appears to offer a partial solution to the vexing problem, but in an era of increased appellate Supreme Court work loads,[20] it may well be appropriate for Congress to re-examine the conceptual basis of statutory courts in state cases and appellate review thereof.[21]
 
 
 33
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 We are treating the three separate appeals as one. Appeal Nos. 19,257 and 19,258 were lodged in this court from the September 4, 1970, order of the district court discharging a rule to show cause and denying summary judgment. Appellants then "contended these were final, and therefore appealable, orders under 28 U.S.C. Sec. 1292(a) (1) since both the Orders to show cause and the Motion for Summary Judgment sought affirmative injunction relief albeit-eo nomine." Appeal No. 71-1876 was from the order of August 4, 1971, dismissing Count One of the complaint
 
 
 [2]
 Appellants' complaint miscites the statutes in question as "N.J.S.A. 18A:-1 to 42 and N.J.S. 18A:31-1 to 24."
 
 
 [3]
 Sec. 1253. Direct appeals from decisions of three-judge courts
 Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges. June 25, 1948, c. 646, 62 Stat. 928.
 
 
 [4]
 COUNT ONE
 Wherefore, Plaintiffs demand judgment:
 (1) Directing the defendants to bring and end to the racial segregation of the schools of the State of New Jersey forthwith.
 (2) Directing the defendants to file with this court a plan
 (a) To correct the racial imbalance of the schools of the State of New Jersey at the start of the semester immediately after the entry of judgment therein.
 (b) To provide compensatory education in those districts which are racially imbalanced immediately and/or to provide funding for said programs.
 (3) Directing the defendants to cease and desist from continuing a segregated system of public schools.
 Cf., the explicit prayer in Count Two:
 COUNT TWO
 Wherefore, Plaintiffs demand:
 (b) A judgment enjoining and restraining the defendant from continuing said system of schools.
 (c) A declaratory judgment declaring N.J.S. 18A:-1 to 42 and N.J.S. 18A:38-1 to 24 unconstitutional. . . .
 (d) Judgment directing the defendants to redraw school district lines and submit a plan for new district lines to be in effect prior to the opening of the public schools for the next semester immediately following the entry of judgment herein.
 (f) Judgment directing the defendants to submit a plan for providing compensatory education to those districts which are racially imbalanced immediately and/or to provide the funding for such purpose.
 
 
 [5]
 A three-judge court is not always required where the constitutional attack takes the form of a request for a federal declaratory judgment, a remedy unknown at the time the predecessor to Sec. 2281 was first adopted in 1910. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154-155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Flemming v. Nestor, 363 U.S. 603, 606-607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)
 A discussion of the conceptual basis of the federal Declaratory Judgment Act, first enacted in 1934, may be found in McCahill v. Borough of Fox Chapel, 438 F.2d 213, 214 (3d Cir. 1971); see Wright, Federal Courts Sec. 50, at 185.
 
 
 [6]
 [W]e can perceive no relevant difference between the two situations [state criminal prosecutions and state tax collections] with respect to the limited question whether, in cases where the criminal proceeding was begun prior to the federal civil suit, the propriety of declaratory and injunctive relief should be judged by essentially the same standards. In both situations deeply rooted and long-settled principles of equity have narrowly restricted the scope for federal intervention, and ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid. This is true for at least two reasons. In the first place, the Declaratory Judgment Act provides that after a declaratory judgment is issued the district court may enforce it by granting "[f]urther necessary or proper relief," 28 U.S.C. Sec. 2202, and therefore a declaratory judgment issued while state proceedings are pending might serve as the basis for a subsequent injunction against those proceedings to "protect or effectuate" the declaratory judgment, 28 U.S.C. Sec. 2283, and thus result in a clearly improper interference with the state proceedings. Secondly, even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would. . . . We therefore hold that, in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well
 Samuels, supra, 401 U.S. at 72-73, 91 S.Ct. at 767.
 
 
 [7]
 In his separate opinion in Perez v. Ledesma, supra, 401 U.S. at 122-124, 91 S.Ct. at 695, Justice Brennan wrote:
 It follows that the Court's statement today in Samuels v. Mackell . . . is not applicable when determining whether to issue a declaratory judgment in a case where no state criminal prosecution is pending. Its applicability is precluded by the nature of the remedy created by the Federal Declaratory Judgment Act, and by our decisions under the Act, culminating in Zwickler v. Koota, supra, which establish that the considerations governing the grant of a declaratory judgment are quite different from those governing the grant of an injunction, even though both forms of relief are discretionary and thus, in the broad sense of the term, "equitable" in nature. The application of the Mackell statement when no criminal prosecution is pending would run counter to our decision this Term in Wisconsin v. Constantineau, 400 U.S. 433, . . . [91 S.Ct. 507, 27 L.Ed.2d 515].
 Moreover, the prerequisites for injunctive and declaratory relief are different. The availability of an alternative adequate legal remedy ordinarily bars an injunction, but does not bar declaratory relief, see Fed.Rule Civ.Proc. 57, unless the alternative remedy was expressly created by statute. See Katzenbach v. McClung, 379 U.S. 294, 295-296, [85 S.Ct. 377, 13 L.Ed.2d 290] (1964). Similarly, irreparable injury must be shown in a suit for an injunction, but not in an action for declaratory relief. Aetna Life Ins. Co. [of Hartford, Conn.] v. Haworth, 300 U.S. 227, 241 [57 S.Ct. 461, 81 L.Ed. 617] (1937). Of course, neither remedy may be afforded in the absence of a live controversy. United States v. Alaska S. S. Co., 253 U.S. 113 [40 S.Ct. 448, 64 L.Ed. 808] (1920); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 [61 S.Ct. 510, 85 L.Ed. 826] (1941); Zwickler v. Koota, supra, at 244 n. 3 [88 S.Ct. 391]. However, the existence of an actual controversy and the adequacy of declaratory relief to resolve it are issues often presenting particular difficulty in declaratory judgment actions, and it is to these issues that judicial discretion in such actions is primarily directed. See Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237 [73 S.Ct. 236, 97 L.Ed. 291] (1952).
 The effects of injunctive and declaratory relief in their impact on the administration of a State's criminal laws are very different. See generally Kennedy v. Mendoza-Martinez, 372 U.S. 144, 152-155 [83 S.Ct. 554, 9 L.Ed.2d 644] (1963). An injunction barring enforcement of a criminal statute against particular conduct immunizes that conduct from prosecution under the statute. A broad injunction against all enforcement of a statute paralyzes the State's enforcement machinery; the statute is rendered a nullity. A declaratory judgment, on the other hand, is merely a declaration of legal status and rights; it neither mandates nor prohibits state action. See Flemming v. Nestor, 363 U.S. 603, 607 [80 S.Ct. 1367, 4 L.Ed.2d 1435] (1960); Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 15-16 (1964).
 
 
 [8]
 It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court, and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional. The latter petition does not require a three-judge court
 Ex Parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249 (1940).
 Indeed, the three-judge court, which considered both counts alleged by appellants, concluded that "[t]he New Jersey Legislature has by intent maintained a unitary system of public education, albeit that system has degenerated to extreme racial imbalance in some school districts; nevertheless the statutes in question as they are presently constituted are constitutional." Spencer v. Kugler, 326 F. Supp. 1235 (D.N.J.)
 
 
 [9]
 See also, Railroad Commission of California v. Pacific Gas & Electric Co., 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319 (1938); Louisville and Nashville Railroad Co. v. Garrett, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229 (1913)
 
 
 [10]
 Concurring in Rosado v. Wyman, supra, Mr. Justice Douglas noted: "There is no rule, however, holding that a three-judge court is required to decide all the claims presented in a suit properly before it, although the practice of a three-judge court remanding a case to the initial district judge for further proceedings seems to have been little used." 397 U.S. at 424, 90 S.Ct. at 1224
 
 
 [11]
 Two rationales are suggested for broad three-judge court jurisdiction: (1) the notion that all controversial issues should be resolved in a single action, Public Service Commission v. Brashear Freight Lines, 312 U.S. 621, 625, 61 S.Ct. 784, 85 L.Ed. 1083 (1941); (2) if a court can avoid reaching the constitutional question, it should have the opportunity to do so. See Sterling v. Constantin, 287 U.S. 378, 393-394, 53 S.Ct. 190, 77 L.Ed. 375 (1932). The two grounds, judicial economy and taking the less incisive alternative, are discussed by Chief Judge Bazelon in Hobson v. Hansen, 256 F.Supp. 18 (D.C.1966)
 
 
 [12]
 See Landry v. Daley, supra, 288 F.Supp. at 199. Indeed considerations of judicial economy now seem to militate against broad three-judge court jurisdiction. See United States v. Singer Mfg. Co., 374 U.S. 174, 175, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962)
 
 
 [13]
 Segregation allegedly due to local school board action is, of course, generally a matter for a single-judge court. Challenges to state-wide schemes, on the other hand, usually require a three-judge panel for disposition. But "[t]he Court has consistently construed [Sec. 2281] as authorizing a three-judge court not merely because a state statute is involved but only when a statute of general and state-wide application is sought to be enjoined," Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967); see also, Perez v. Ledesma, supra, 401 U.S. at 86-88, 91 S.Ct. 674; Keiser v. Bell, 332 F.Supp. 608, 613 (E.D.Pa.1971); Safeguard Mutual Ins. Co. v. Commonwealth of Pennsylvania, 329 F.Supp. 315 (E.D.Pa.1971). In school desegregation cases, the boundaries of the problem and, hence, the road to the proper forum, are not often clearly marked. See Rutledge v. State of Louisiana, 330 F.Supp. 336, 338-339 (W.D.La.1971)
 
 
 [14]
 Even assuming the substance of Count One to be of less than constitutional dimension, the three-judge court would have been free to decide the case on nonconstitutional grounds, thus avoiding the direct challenges to the New Jersey statutes, without losing its jurisdiction. King v. Smith, 392 U.S. 309, 311-313, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Doe v. Swank, 332 F.Supp. 61, 63 (N.D.Ill.1971)
 
 
 [15]
 Indeed, in school desegregation cases, the avenues are apt to intersect. See Lee v. Macon County Board of Education, 429 F.2d 1218, 1219 (5th Cir. 1970), in which school desegregation plans were considered by a three-judge court, but appeal lay to the Court of Appeals rather than the Supreme Court; the matters were held not to be of a constitutional dimension sufficient to be appealable under 28 U.S.C. Sec. 1283
 
 
 [16]
 See, e. g., Somportex Limited v. Philadelphia Chewing Gum Corp., 453 F.2d 435 (3d Cir. 1971)
 
 
 [17]
 [T]he doctrine of comity . . . teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter
 Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See also, Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Bergen v. Bergen, 439 F.2d 1008, 1014-1015 (3d Cir. 1971).
 
 
 [18]
 In the interest of the conservation of judicial resources and comprehensive disposition of the litigation between the two parties, litigation with common issues should not proceed simultaneously in two different forums
 Kewanee Oil Co. v. M & T Chemicals, Inc., 315 F.Supp. 652, 655 (D.Del.1970). See also, Research Corp. v. R. C. A., 181 F.Supp. 709, 711 (D.Del.1960).
 
 
 [19]
 Proposal Sec. 1374, ALI Study: "A district court of three judges shall be convened when otherwise ordered by Act of Congress, or when an action is filed seeking an injunction or declaratory judgment against a State officer. . . ." (Emphasis supplied.)
 
 
 [20]
 Ammerman, "THREE-JUDGE COURTS: See How They Run!", 52 F.R.D. 293, 303-304:
 The three-judge court procedure pursuant to section 1253 brings a large class of cases directly to the Supreme Court, which is not permitted to exercise its traditional right of selective jurisdiction. Moreover, such direct-appeals pose a threat to an already crowded docket that included 3357 cases in 1969. The Court already has insufficient time for the important cases before it. The Court disposed of 2880 cases by denial or dismissal of certiorari in 1969, but that device is not available in three-judge cases. The policy of certiorari leaves it to the Court to determine on a discretionary basis which of the cases on the docket shall be once more reviewed. The various provisions for mandatory Supreme Court jurisdiction are diametrically opposed to that policy, presumably because of Congress' determination that certain classes of cases are important enough that Supreme Court review should not depend upon the Supreme Court's consent. All too often the Court is forced into dealing with insignificant matters, according to Mr. Justice Harlan, "often either at the unnecessary expenditure of its own time or at the risk of inadequate appellate review if a summary disposition of the appeal is made." Additionally, as already mentioned by the Judicial Conference of the United States, the direct appeal eliminates the opportunity for the refining analysis and argument obtained when a case comes through the courts of appeals.
 See also, State of the Federal Judiciary Message delivered by Chief Justice Warren E. Burger, July 5, 1971: "Nine Justices must now deal with approximately 4000 filings each year as compared with 1100 filings in 1940 and 1300 in 1950."
 
 
 [21]
 Representative Emanuel Celler, Chairman of the House Judiciary Committee, introduced H.R. 3805 (February 8, 1971), with the support of the Judicial Conference. The bill would amend sections 2281 and 2282 to eliminate the three-judge court requirement. It would not, however, affect other statutes which include special and independent provisions for three-judge courts, i. e., three-judge courts convened for the taking of land by the T.V.A.; for violations of the 1964 Civil Rights Act and Voting Rights Act of 1965; and I.C.C. matters affected by the proposed amendment to the Expediting Act
 Ammerman, supra, 52 F.R.D. 293 at 294.