Anthony T. LEE et al., Plaintiffs,

United States of America, Plaintiff-Intervenor, and Amicus Curiae,

National Education Association, Inc., Plaintiff-Intervenor, Appellant,

v.

PIKE COUNTY BOARD OF EDUCATION et al., Defendants-Appellees.

No. 77–1821.

United States Court of Appeals, Fifth Circuit.

Aug. 25, 1978.

Myron H. Thompson, Dothan, Ala., Solomon S. Seay, Jr., Montgomery, Ala., for appellant.

Oliver W. Brantley, Donald G. Walker, Superintendent of Ed., Troy, Ala., for defendants-appellees.

J. Stanley Pottinger, Asst. Atty. Gen., Civ. Rights Div., Dept. of Justice, Washington, D.C., Ira DeMent, U.S. Atty., Montgomery, Ala., for U.S.A.

Before COLEMAN, TJOFLAT and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

This appeal was taken from the district court's denial of a motion to enforce the remedial provisions relating to teacher salaries of the Pike County, Alabama, school desegregation decree. The only issue presented is whether the Pike County Board of Education violated the decree by paying the appellant, Eddie K. Jones, a black principal, a lower salary on account of his race.[1] The district court found that salary disparities existed among the principals in the Pike County School System, but that they were the result of payment practices applicable to all of the principals without consideration of race. Record at 40. There are no facts in the record from which one could draw the conclusion that Jones has been discriminated against because of his race. Since the district court's findings are, therefore, not clearly erroneous, we affirm.

Desegregation efforts in the Pike County School System[2] found their way to federal court in the parent case of *Lee v. Macon County Board of Education*, 231 F.Supp. 743 (M.D.Ala.1964) (three-judge court). *See Lee v. Macon County Board of Education*, 429 F.2d 1218, 1219–20 (5th Cir. 1970). Numerous Alabama school systems were intermittently made parties defendant in that case; ultimately, over one hundred separate school systems were brought under the court's supervision. Individual plans were submitted for each school system, and many of the plans were incorporated in final decrees entered by a three-judge court. No appeals were taken from any of these decrees.

The final order desegregating the Pike County School System was entered on February 12, 1970, and amended on March 23, 1970. On March 31, 1970, the three-judge court, which had retained jurisdiction over each of the school systems before it, transferred jurisdiction of the consolidated case

---

1. Appellant alleges that he has been paid less than his nonblack counterparts because of his race since the entry of the decree in 1970, but he offered evidence covering only the school years 1974–75, 1975–76, and 1976–77.

2. Multiple school systems are located in Pike County. Only the county's school system is involved in this appeal.

to the federal district courts of Alabama in whose territories the defendant school boards resided. Venue for the Pike County phase of the litigation was consequently laid in the Middle District of Alabama.

One of the remedial provisions of the Pike County decree required the School Board to utilize nonracial criteria in determining compensation for professional staff, including principals such as the appellant, Jones. On May 10, 1976, the plaintiffs and several members of the professional staff, including Jones, filed a motion for further relief, alleging that the Board had violated the 1970 desegregation decree in numerous respects. During the pretrial proceedings that followed, the movants' claims were reduced to those of three black staff members, Jones being one, who contended that the Board had taken race into account in setting their salaries. After a hearing on the merits, the district court found that race had not been a factor and denied relief. Of the three staff members affected by the district court's determination, only Jones has appealed.

■ Jones' claim for relief is not predicated on 42 U.S.C. §§ 1981 or 1983 (1970) or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 (1970). It is, instead, simply an application by an intervenor, in a school desegregation case, seeking relief under remedial provisions of a final desegregation order that in part were fashioned by the court to protect his rights. Under our precedent, he has standing to enforce such rights by applying for relief to the district court presiding over the school case, when jurisdiction to enforce the remedial provisions of the final decree has been retained. See Davis v. Board of School Commissioners of Mobile County, 517 F.2d 1044, 1049 (5th Cir. 1975) cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

■ Jones contends that the district court's finding that racial considerations were not a factor in the Board's establishment of his salary is not supported by the record. We cannot agree. Whether we review the finding of nondiscrimination under the clearly erroneous standard of Fed.R.

Civ.P. 52 or, as Jones suggests, under the standard applicable to Title VII cases, wherein the issue of discrimination addresses an ultimate fact not subject to the clearly erroneous rule, Causey v. Ford Motor Co., 516 F.2d 416, 421 (5th Cir. 1975), we are convinced that the district court's finding is correct.

The conclusion that Jones' salary was never the product of racial bias is made clear from the statistical evidence he introduced to support his claim. As the district court found, during the three year period covered by the statistical evidence "between two and four of the white principals were paid less than Mr. Jones and . . . between one and three of the white principals were paid more than Mr. Jones." Record at 40. The court also found that elementary principals were generally on a lower pay scale than high school principals; principals with "AA" certificates were paid more than those with "1" certificates; and principals of smaller schools were paid less than principals of the larger schools. Jones was an elementary school principal, with a "1" certificate, and was in charge of one of the larger elementary schools. No principal in the system was similarly situated; thus there was no one with whom a direct comparison could be made. However, when one considers Jones' certification, the length of his tenure and the size of the school he supervised vis-a-vis those of the other principals, it is clear from the statistical evidence that his salary was in keeping with those attained by his colleagues. Moreover, there is no indication from the statistics that the lower salaries impacted on the black principals.

Given a record containing no direct or circumstantial evidence that race played a role in the Board's establishment of the principals' and Jones' salaries, we cannot fault the district court for being "unable to find that unequal treatment appears to follow a racial pattern so as to place the burden on the school board to show by clear and convincing evidence that racial discrimination is not the explanation." Record at 40. The judgment of the district court is

AFFIRMED.