**Jerusha Blanche HOPSON et al., Plaintiffs,**

v.

**W. Keith SCHILLING et al., Defendants.**

**Civ. No. L 75–30.**

United States District Court, N. D. Indiana, Hammond Division at Lafayette.

July 15, 1976.

Ivan E. Bodensteiner, Valparaiso Univ. Sch. of Law, Susan H. Schwandt, Ind. Center on Law & Poverty, Valparaiso, Ind., Alfred E. McClure, Lafayette, Ind., for plaintiffs.

Hoffman & Melichar, Lafayette, Ind., for defendants.

## MEMORANDUM OF DECISION AND ORDER

### JESSE E. ESCHBACH, Chief Judge.

This cause is now before the court on the "Multiple Motion of Defendant" Schilling, filed December 31, 1975, on plaintiffs' "Motion for Order Determining Classes and Allowing Discovery from Absent Members of Defendant Class," filed February 10, 1976, and on intervening defendant State of Indiana's motion to dismiss, filed June 4, 1976. On May 5, 1976, the court determined most of the contentions raised by Schilling's "Multiple Motion," leaving only those relating to the propriety of class certification. On June 16, 1976, a hearing was held in regard to the class action issues at which all parties appeared and participated. In light of the evidence taken and for the reasons given below, defendant Schilling's motions to dismiss will be denied, plaintiffs' motion for certification of classes will be granted as modified, and intervening defendant's motion to dismiss will be denied.

Plaintiff is an indigent eligible for assistance [1] under Indiana's poor relief laws, Ind. Code §§ 12–2–1–1 to –39 (Burns 1973); co-plaintiff is a welfare rights organization. The defendant is the trustee of the township in which the principal plaintiff maintains her legal settlement. Pursuant to Ind.Code § 12–2–1–1, defendant, as township trustee, is *ex officio* the "overseer of the poor" within his township. Plaintiff alleges that on numerous occasions she applied for assistance pursuant to the poor relief laws, that on certain occasions she was denied assistance without written statement of the reasons for the adverse action and without statement of her right to appeal, and that the trustee's actions were not based on any written, published standards regarding the granting or denial of benefits. Plaintiff asserts that the poor relief laws are unconstitutional on their face in that they fail to provide for the procedures which the trustee failed to follow, and that the statutes have been unconstitutionally applied to plaintiff in that the trustee failed to give the notice of reasons and of right to appeal and failed to base his decision on public, written standards.[2]

In the second count of her complaint, plaintiff asserts that defendant improperly denied her certain benefits for payment of mortgage obligations. Under Ind.Code § 12–2–1–10(b), the trustee "may" pay for "shelter." Defendant in fact pays rental obligations in appropriate circumstances. Plaintiff asserts that the refusal to pay her mortgage payments violates the Indiana statute; alternatively, she asserts that the

---

1. "Eligibility" here means that plaintiff is a "poor person" as required by section 12–2–1–6 or a person "claiming to be poor and in distress" under section 12–2–1–7. The statutes comprising the Indiana poor law do not further define "poor" or set standards or criteria for the determination of need. Plaintiff, however, has at all times been found to be needy under the poor relief laws and thus lacks standing to attack this lack of statutory guidelines.

2. In a brief filed February 10, 1976, plaintiff appeared to forego her "as-applied" claims. *See id.* at 15, 17, 19. At the hearing on the motion, however, counsel for plaintiff characterized the relief sought as based on alternative *theories of unconstitutionality on the face of* the statute and unconstitutionality in its application.

failure to pay mortgage payments violates the equal protection clause of the Fourteenth Amendment.

Plaintiff seeks certain class certifications in both counts of her complaint. In her first count, dealing with alleged deprivation of due process in the handling of assistance applications, plaintiff seeks to certify a defendant class conditionally consisting of all township trustees in Indiana and a concomitant plaintiff class consisting of all present and future applicants for poor relief within the state. Final certification is not sought until discovery is completed, at which time it would be known which trustees do not now follow the procedures which plaintiff asserts are constitutionally required. Under Count II, plaintiff seeks a plaintiff class only, to consist of all eligible poor relief recipients in Fairfield Township of Tippecanoe County, Indiana, who now or in the future may be denied payment of mortgage obligations.

Under Count I, plaintiff seeks a declaratory judgment that the poor relief laws are unconstitutional on their face and as applied, and an order to "require the defendant Schilling to submit a plan for implementation of the court's judgment." Plaintiff Hopson also seeks damages against defendant Schilling, but only in plaintiff's individual capacity and not as class representative. Under Count II, plaintiff seeks declaratory and injunctive relief against defendant Schilling, only her demand for damages is made in her own name and not as class representative.

### Jurisdiction

Count I of this suit is brought under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction laid under 28 U.S.C. § 1343. Count II is brought under the court's pendent jurisdiction and under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Plaintiff's class action claims in Count I, seeking as they do a remedy against a state statute administered on a state-wide basis, bring into play the provisions of 28 U.S.C. § 2281:

"An interlocutory or permanent injunction restraining the enforcement, opera-

tion or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute . . . shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges . . . . ."

▉ Although no party has requested the convening of a three-judge court, the question is jurisdictional and may be raised by the court sua sponte. See, e. g., Grove Press, Inc. v. Flask, 417 F.2d 1062 (6th Cir. 1969). In a case properly to be heard by a three-judge court, the single judge must inquire into the jurisdictional facts necessary to found federal jurisdiction and those necessary to found the jurisdiction of the three-judge court. If three-judge court jurisdiction is properly found, all actions concerning the merits must thereafter be made by the three-judge court. *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). If the case is one for three judges, consideration of the propriety of plaintiff's class action allegations should await the convening of the three-judge court. *Cf. Law Students Civil Rights Research Council, Inc. v. Wadmond,* 291 F.Supp. 772, 777 (S.D.N.Y. 1968); *but cf. Ortiz v. Engelbrecht,* 474 F.2d 977, 978 (3d Cir. 1973). Accordingly, the court must first determine the jurisdictional question before turning to the issues raised by the request for class certification.

▉ Plaintiff seeks a declaratory judgment determining the unconstitutionality of a state statute, to be issued against all township trustees in the state. Although the requested relief would have state-wide effect, a declaratory judgment is not an "injunction" within the meaning of 28 U.S.C. § 2281, for the granting of which a three-judge court would be required. *Mitchell v. Donovan,* 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); *Ream v. Handley,* 359 F.2d 728, 732 (7th Cir. 1966).

Plaintiff has requested, under the first count of her complaint, that the court "Re-

quire the defendant Schilling to submit a plan for implementation of this Court's judgment." Should the court declare unconstitutional the failure to promulgate standards and give the notice requested, it is apparently plaintiff's demand that defendant Schilling take affirmative action within his township to "implement" the declaratory judgment.

Although not expressly denominated an "affirmative injunction," the coercive relief requested against Schilling goes well beyond the passive relief anticipated within the meaning of declaratory relief. The requested order whereby defendant would be directed to alter his allegedly unconstitutional practices is implicitly injunctive in nature. *Cf. Spencer v. Kugler,* 454 F.2d 839 (3d Cir. 1972) (action to declare school segregation unconstitutional; relief sought included demand that state officials submit a plan to rectify the racial imbalance as "implementation" of the declaratory judgment. *Held:* A three-judge court was properly convened.) It is not of consequence that the injunctive relief is sought as implementation of a declaratory judgment rather than directly as a remedy of the allegedly unconstitutional conduct, for when the injunctive relief is sought at the same time the declaratory relief is sought, the distinction is one of pleading only and not of substance.[3] *Brown v. Liberty Loan Corp.,* 392 F.Supp. 1023, 1030 (M.D.Fla.1974).

Although plaintiff seeks declaratory relief effective as against all trustees in the state, her injunctive relief is sought only against one trustee. This is sufficient to invoke Section 2281 which requires a three-judge court when "*any* officer" of the state is sought to be enjoined.

Defendant Schilling, as "Overseer of the Poor," is an officer of the state within the meaning of Section 2281. He is, of course, a township trustee. Under the poor relief laws, he has primary responsibility for carrying out the provisions of the poor relief act. Ind.Code § 12–2–1–1. There is no state-level office or administrator having jurisdiction over the trustee's conduct as overseer of the poor. Ind.Code § 12–1–20–1. Under these circumstances, the township trustee is a state officer, for "[i]t has long been settled that a three-judge court is proper even in a suit against a local official, although localized in his geographic activities and mode of his selection, when he is engaged in enforcing a policy of statewide application whose constitutionality is challenged." *Board of Regents of the University of Texas System v. New Left Education Project,* 404 U.S. 541, 545 n.2, 92 S.Ct. 652, 654, 30 L.Ed.2d 697 (1972); *Turner v. Fouche,* 396 U.S. 346, 353 n.10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

A three-judge court is required when the injunctive relief is sought on the basis of the unconstitutionality of a state statute.[4] There is a threshold conceptual problem in a case such as this in which the allegedly unconstitutional statute does not, on its face, particularly promote, sanction, prohibit or inhibit the practices complained of. The poor relief act speaks generally of "applicants" for poor relief, *e. g.,* Sections 12–2–1–5, 12–2–1–10(a), (d), (e), 12–2–1–11, 12–2–1–14, 12–2–1–18. The act also speaks of "claims for relief." Ind.Code § 12–2–1–7. But nowhere is the trustee required to establish any sort of administrative machinery for the processing of claims.[5] Indeed, except for Section 12–2–1–18, the act is

**3.** Whether a three-judge court is required where injunctive relief is sought to effectuate a declaratory judgment entered in a previous suit between the parties is a question left open in *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

**4.** A three judge court is required whether the unconstitutionality is alleged to lie on the face of the statute or in its application. *Steffel v. Thompson,* 415 U.S. 452, 457 n.7, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Turner v. Fouche,* 396

U.S. 346, 353 n.10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). This case does not present the situation in which a concededly constitutional statute has been applied in a manner inconsistent with the statute itself. *Cf. Ex parte Bransford,* 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940).

**5.** The provisions of Indiana's Administrative Adjudication Act do not apply to the trustee's welfare activities. Ind.Code § 4–22–1–2 (Burns 1974).

silent as to any procedure that the trustee is to follow in administering poor relief. If the relief plaintiff seeks is granted, not one word of existing statutory law will have to be rewritten.

For the proposition that in such circumstances a three-judge court is not required, *see, e. g., Hunt v. Edmunds,* 328 F.Supp. 468, 470–72 (D.Minn.1971) (three-judge-court):

> Minnesota state law in its present form does not expressly deny recipients [notice and an opportunity to be heard] in assistance payments reduction cases. . . .
> The present thrust of plaintiff's complaint is that Cass County Minnesota officials denied her certain constitutional rights by refusing to afford her notice and hearing prior to the reduction of the grant. The denial of such procedures is not now required by applicable statutes and regulations . . . . Those laws would clearly permit County authorities to extend to the plaintiff the privileges she seeks.
>
> .    .    .    .    .
>
> In the instant case, plaintiffs do not contend that to meet [constitutional requirements] state statutes and regulations must be rewritten . . . . Rather, the plaintiffs are concerned with the practice of denying such procedural safeguards, a practice which is permitted but not required by the statutes and regulations they purport to challenge. The case does not require a three-judge court.[6]

In *Lucas v. Wisconsin Electric Power Co.,* 466 F.2d 638, 644 (7th Cir. 1972) (en banc), *cert. denied,* 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973), the court held, per Stevens, J.: "The rules which the defendant Power Company filed pursuant to

[the challenged] regulation do not have state-wide application and the regulation itself does not foreclose the procedural safeguards which the plaintiff requests. We are satisfied, therefore, that a three-judge court should not be convened." [7]

These cases draw heavily upon *Griffin v. County School Board of Prince Edward County,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). To circumvent the decision in *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the State of Virginia amended its education laws to make attendance at school optional according to the decision of the counties and enacted a general tuition-grant program. In Prince Edward County, the county supervisors decided not to require school attendance and thereupon closed the public schools in order not to integrate them. In addition, the county enacted a tuition-grant program, pursuant to state statute to aid students in attending private schools. Prince Edward County was the only county to take full advantage of the new state laws.

In ruling that a single judge could hear the constitutional questions, the Court held: "While a holding as to the constitutional duty of the Supervisors and other officials of Prince Edward County may have repercussion over the State and may require the District Court's orders to run to parties outside the county, it is nevertheless true that what is attacked in this suit is not something which the State has commanded Prince Edward [County] to do—close its public schools and give grants to children in private schools—but rather something which the county with state acquiescence and cooperation has undertaken to do on its own volition, a decision not binding on any other county in Virginia. Even though ac-

---

6. The court cites seven cases in support of this proposition and notes six others that are *contra. See also Sweeten v. Sneddon,* 324 F.Supp. 1094, 1097 (D.Utah 1971), *rev'd on other grounds,* 463 F.2d 713 (10th Cir. 1972); *cf. Doe v. Rose,* 499 F.2d 1112 (10th Cir. 1974).

7. In this case, the regulation referred to permitted termination of electrical service on account of unpaid bills. The regulation did not address

the procedures to be followed by the affected power companies. Plaintiff challenged the regulation on the grounds that it did not require notice and a hearing. *Cf. Red Bird v. Berry,* 371 F.Supp. 730, 732–33 (W.D.Okl.1973), where the court cites 21 cases for the proposition that "a three-judge court is not required where State Statutes would be constitutionally applied if administered properly."

tions of the State are involved, the case, as it comes to us, concerns not a state-wide system but rather a situation unique to Prince Edward County. We hold that the single district judge did not err in adjudicating the present controversy." *Id.*, 377 U.S. at 228, 84 S.Ct. at 1231.

Seemingly to the contrary is *Query v. United States,* 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942), where the Court held that a three-judge court was required to consider the threatened application by South Carolina officials of a state tax on tobacco and other goods to sales made at army post exchanges. The state statute was silent as to its applicability to sales on military reservations. Since the statute appeared to authorize the conduct complained of, a three-judge court was required, the Court distinguishing *Phillips v. United States,* 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941), as "a case in which the state officials threatened to engage in conduct which state law could not reasonably be construed to authorize." 316 U.S. at 490, 62 S.Ct. at 1124.[8]

In these cases, however,[9] the official conduct challenged was sought to be justified by reference to the authority of a state statutory provision, and, although the statute on its face was not self-delimiting to the point of excluding the officials' action, a reasonable construction of the statute's language might have included the conduct challenged. In the instant case, however, there is no provision of Indiana's poor relief laws to which the trustee may look to justify his refusal to adopt the procedures demanded; yet, likewise, plaintiff can find no provision of the poor relief laws that suggests that the trustee ought to adopt the procedures.

Implicit in the statutory delegation of powers to the township trustee to administer poor relief is the delegation of discretionary authority to establish standards and procedures. *See* Ind.Code § 12–2–1–18. If the delegee agency under the Indiana poor relief laws were a state agency, it would not be difficult to conclude that the method of administering the statute sufficiently implicated the authorizing statute itself that a three-judge court would be appropriate under 28 U.S.C. § 2281. *Cf., e. g., Sands v. Wainwright,* 491 F.2d 417 (5th Cir. 1973) (en banc), *cert. denied,* 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771 (1974). *But cf. Dorado v. Kerr,* 454 F.2d 892, 894–96 (9th Cir. 1972), *cert. denied,* 409 U.S. 934, 93 S.Ct. 244, 34 L.Ed.2d 188 (1972). Where the delegee is a local official, and where plaintiff does not attack the delegation of authority itself, then the local official's policies—authorized by the delegation but not expressly authorized by the substantive provisions of the statute—would not be matters of state-wide policy such that a three-judge court should be convened. *Cf. Misurelli v. City of Racine,* 346 F.Supp. 43, 45–46 n.2 (E.D.Wis.1972) (three-judge court), *vacated and remanded on other grounds sub nom. City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *McCrimmon v. Daley,* 418 F.2d 366, 368–69 (7th Cir. 1969). *See also Southern Alameda Spanish Speaking Org. v. City of Union City, California,* 424 F.2d 291, 296 (9th Cir. 1970); *Woodward v. Rogers,* 344 F.Supp. 974, 978–79 & nn.5–7 (D.D.C.1972), aff'd mem., 159 U.S.App.D.C. 57, 486 F.2d 1317 (1973). It is the *"state's* legislative policy" which is to be protected against "improvident state-wide doom by a federal court" by section 2281, *Phillips v. United States,* 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941) (emphasis added); and not merely a township trustee's policy. Thus, in *Hunt v. Edmunds, supra,* 328 F.Supp. 468 (D.Minn. 1971) (three-judge court), the court found

---

**8.** *See also Astro Cinema Corp. v. Mackell,* 422 F.2d 293 (2d Cir.1970); *Safeguard Mut. Ins. Co. v. Pennsylvania,* 329 F.Supp. 315 (E.D.Pa.1971). *Cf. Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Zemel v. Rusk,* 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1964); *McGlotten v. Connally,* 338 F.Supp. 448 (D.D.C.1972).

**9.** In addition to *Query* and cases cited note 8 *supra,* see *Dempsey v. McQueeney,* 387 F.Supp. 333, 341 (D.R.I.1975); *Thomas v. Burke,* 379 F.Supp. 231, 236 (D.R.I.1974). *See also Americans United for the Separation of Church & State v. Paire,* 475 F.2d 462 (1st Cir.1973).

that the state statutes regulating welfare payments, while necessarily authorizing county officials to adopt procedures for processing welfare claims, expressed no preference or direction as to the manner in which the counties were to exercise their discretion; hence, there simply was no legislative policy at the state level with which an injunction would interfere. So also in *Griffin v. County School Board of Prince Edward County, supra,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), although a state policy opposing integration was clearly manifested by the state statutes abrogating the compulsory attendance laws and in establishing tuition grants, the decision by Prince Edward County in taking this policy one step further by closing all the public schools was "a situation unique to Prince Edward County." *Id.* at 228, 84 S.Ct. at 1232. Conversely, in *Misurelli, supra,* a state statute which on its face gave local city councils the option of holding liquor renewal hearings in "legislative" rather than judicial fashion (without the requirements of oath, cross-examination, or taking of testimony by transcript) was found in

fact to be a legislative preference for the nonjudicial model. 346 F.Supp. at 45–46 n.2.

This court must therefore determine whether the alleged refusal by defendant Schilling to make poor relief decisions according to published, written standards, or to give a disappointed applicant notice of the reasons for the adverse action and of his right to appeal, implicates *state* legislative policy rather than merely local policy. *Cf. City of Cleveland v. United States,* 323 U.S. 329, 332, 65 S.Ct. 280, 89 L.Ed. 274 (1945).

Plaintiff alleges and the evidence fairly establishes that of the 1008 township trustees in Indiana, the overwhelming majority fail to provide the procedures demanded. It is therefore not a situation "unique" to Fairfield Township. *Cf. Griffin, supra; Kendrick v. Walder,* 527 F.2d 44, 46–47 n.3 (7th Cir. 1975).

Further, a study of the history of poor relief in Indiana shows that the unbridled discretion of the trustee in relation to the applicant for poor relief is the intended method of applying the poor relief laws.[10]

---

10. If the discretion of the trustee were totally unbridled, it is doubtful that an applicant could claim the sort of expectancy in the benefits which could rise to the level of a "property" interest under the Constitution. *See, e. g., Bishop v. Wood,* —— U.S. ——, 96 S.Ct. 2074, 48 L.Ed.2d 684, 44 U.S.L.W. 4820 (U.S., June 10, 1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *Cf., e. g.,* the many statutes authorizing federal research grants. In the case of the township trustee, however, the legislative delegation is not of complete discretion, *see, e. g.,* Ind.Code § 12–2–1–6 (limitation on forms of aid); § 12–2–1–18 (trustee to advise county commissioners of poor relief standards). Especially under section 12–2–1–18, it is apparent that as between the county commissioners and the township trustee, the trustee is expected to exercise his delegated powers by promulgating standards. But while the statute, fairly read, anticipates certain conduct by the trustee, the statutes do not expressly place in the applicant a right to command the performance of these duties. Under section 12–2–1–6, the trustee's duty to provide medical assistance (not in issue in this case) is absolute even if the indigent does not formally apply for aid. *Washington Twp. of Allen Co. v. Parkview Mem. Hosp.,* 144 Ind.

App. 359, 246 N.E.2d 391, 394 (1969). In contrast to the provisions of section 12–2–1–6 that the trustee "shall" pay for medical care, that section indicates only that the trustee "may" provide the other items in issue here. It should be clear from section 12–2–1–18, however, that the poor relief law, as a whole, anticipates that the grant of discretion as to nonmedical assistance, in section 12–2–1–6, will be exercised by the trustee in such a manner that the county commissioners may be guided by the trustee's written standards. Until the trustee has exercised his discretion, the applicant has, under Indiana law, a colorable claim to any of the items of relief listed in section 12–2–1–6: *see* section 12–2–1–18 (where trustees have issued no standards, county commissioners are to grant relief on a case-by-case basis). In any event, a trustee's denial of benefits is not so discretionary under Indiana law that judicial review is unavailable in state courts. *See* Note, *General Assistance Programs: Review and Remedy of Administrative Actions in Indiana,* 47 Ind.L.J. 393 (1972); *cf. State ex rel. Smitherman v. Davis,* 238 Ind. 563, 151 N.E.2d 495 (1958); L. Jaffe, Judicial Control of Administrative Action 181 (1965). Accordingly, because the trustee's discretion is statutorily narrowed and because his actions are subject to judicial review, there is sufficient "property" ascribable to the applicant to warrant due

The office of overseer of the poor ante-dates the admission of Indiana to statehood. Under the laws of the Northwest Territory, justices of the peace were to divide the territory into townships and to appoint within each township an overseer of the poor. *See* A. Shaffer, M. Keefer & S. Breckinridge, *The Indiana Poor Law* 9 (1936) (hereinafter referred to as *Indiana Poor Law*). *See generally* Rosenberg, *Overseeing the Poor: A Legal-Administrative Analysis of the Indiana Township Assistance Program,* 6 Ind.L.Rev. 385 (1973). Under the earliest laws, the overseer was to locate destitute persons within his jurisdiction, to seek gainful employment for those capable of work, and to place in a home the "old, blind, impotent and lame persons or other persons not able to work." *Indiana Poor Law* at 10. The reality of the situation was that poor people capable of work were literally sold under contract at annual auction, *id.* at 12, while children were placed at indenture. These practices continued after Indiana gained statehood, although administration of poor relief was often at the county level. It appears that the duties of the overseer of the poor in putting to work all indigent able-bodied persons found within his jurisdiction coincided with those of the constable or sheriff to suppress vagrancy, a vagrant being an "able-bodied person, found loitering and wandering about and not having wherewithal to maintain himself by some visible property and [who does] not betake himself

to labor in some honest calling to procure a livelihood." *Id.* at 16–17.[11] Poor people found to have a legal settlement in another township were to be given "transportation" out of the township.[12]

Until 1897, the activities of the township trustee as overseer of the poor were totally unregulated by the state.[13] In that year, a minimal review of the trustee's expenditures and budget by state authorities was instituted, but the trustee's discretion within his township was unaffected within these budgetary limits. The trustee was directed to inquire into the possibility that relatives of the poor person might offer relief (*see* Ind.Code § 12–2–1–11) and to require the poor person and his family seek work as a precondition to receiving assistance (*see* Ind.Code §§ 12–2–1–10(a), (b)).

Beyond these directives that the indigent exhaust other possible sources of aid, including work to be provided by the trustee, *see* Ind.Code § 12–2–1–10(a), little legislative direction is provided. The early view, still adhered to except for medical payments, is that "The legislative intention [is] that the poor of each county and the transient poor shall, in every event, receive all necessary relief, at the expense of the proper county; and . . . the nature and extent of such relief, in each particular case, is largely intrusted to the sound discretion and practical judgment of the township trustee, as overseer of the poor." *Board of Comm'rs v. Harlem,* 108 Ind. 164, 8 N.E. 913, 916 (1886).

process. The question presented here is whether the discretion which the trustee must exercise for the benefit of review must also be exercised for the benefit of the applicant.

11. The purpose of suppressing vagrancy still appears in the modern poor relief statutes. *See, e. g.,* Ind.Code § 12–2–1–13, where the trustee is instructed to communicate with private charitable organizations in his district to avoid duplication of relief and so that "the creation of new families of paupers through misguided and useless alms may cease."

12. Still the law. *See* Ind.Code § 12–2–1–15 (as to indigents whose true settlement has been determined). The duties of the overseer of the poor in relation to the needy who were ill was and is handled differently: as to these, the trustee must provide emergency assistance,

even to those not residing in his jurisdiction. *See Indiana Poor Law* at 118–53. In this century, primary responsibility for the needy seeking medical care passed from the overseer of the poor to various county and state agencies. Medical assistance is not involved in this case.

13. Township trustees became the sole overseers of the poor in 1852. *Indiana Poor Law* at 48. Because poor relief was administered from county funds and since the county had no authority over the trustee, certain abuses in expenditures occurred. *See id.* at 48–49. It was the budgetary excesses and not concern for the rights of individual applicants which prompted the legislation establishing limited oversight by the state Board of Accounts over the trustee's actions as overseer of the poor.

The historical background, evident in the early case decisions involving poor relief, show that the trustee, as overseer of the poor, had much the same discretion in enforcing the poor relief laws as did the sheriff in the enforcement of the vagrancy laws. Each performed his duties for the benefit of the public: the trustee truly was overseer of the poor, placing them in a poorhouse, or placing them in temporary public employment, or simply providing them with food and shelter. And much like the situation where a sheriff does not perform his duties in proper manner, if the trustee failed to provide for the necessaries of the poor, the remedy lay with the public at the following election. *See Commissioners of Morgan Co. v. Holman,* 34 Ind. 256, 259 (1870). The notion that the trustee's aid was a "right" or even a "privilege" assertable by an applicant was foreign to the jurisprudence of the era. *See Rosenberg, supra,* 6 Ind.L.Rev. at 385–86.

In light of the history of the Indiana poor law, the lack of any requirement that the trustee bind himself by publishing written standards for relief or that he establish procedures for the processing of claims, including written notification of the reason for rejection, is not merely the policy of defendant Schilling: it is manifestly state policy, inherent in the poor relief law itself.

Further, Section 12–2–1–18 itself expressly condones a trustee's failure or refusal to bind himself by promulgation of standards: if appeal is taken to the county commissioners, the commissioners are not to demand of the trustee that he inform them of the basis for his decision; rather, the commissioners are to apply their own (unpublished) standards to the appeal. From the statute, in light of its history, it appears that administrative informality of the sort challenged here is part and parcel of the substantive relief to be afforded by the poor laws.

"Congress established the three-judge court apparatus for one reason: to save state and federal statutes from improvident doom, on constitutional grounds, at the hands of a single federal district judge." *Gonzalez v. Automatic Employees Credit Union,* 419 U.S. 90, 95 S.Ct. 289, 294, 42 L.Ed.2d 249 (1974). The statutes which plaintiff challenges, although facially silent, in fact authorize and support the policy of the trustees in failing to articulate standards for decision or to give written reasons for adverse decisions. The policy may properly be said to be the legislative policy of the state; [14] and especially in light of plaintiff's claim for state-wide class relief, the provisions of 28 U.S.C. §§ 2281 and 2284 are applicable.

Nonetheless, a three-judge court need not be convened in this case since "three judges are . . . not required when, as here, prior decisions make frivolous any claim that a state statute on its face is not unconstitutional." *Bailey v. Patterson,* 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962); *see also Goosby v. Osser,* 409 .U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

In the usual circumstance justifying application of the rule in *Bailey v. Patterson, supra,* the prior decisions which foreclose justification of a challenged statute arose under different but closely analogous statutory provisions, which were found to be unconstitutional by the Supreme Court or by overwhelming unanimity among the circuits. In this case, it is not that a statute similar to Indiana's poor relief law has been struck down; it is that the precise section of Indiana's poor relief law here in issue has already been declared unconstitutional on its face and, indeed, for the very reasons urged by plaintiff herein. *Brooks v. Center Township,* 485 F.2d 383 (7th Cir. 1973), *cert. denied, Indiana v. United States Court of Appeals for Seventh Circuit,* 415 U.S. 911, 94 S.Ct. 1455, 39 L.Ed.2d 496 (1974).[15]

---

14. This distinguishes the case from *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 1555 n.2, 47 L.Ed.2d 810 (1976), in which the failure of a statute to address the issue challenged was found insufficient reason to convene a three-judge court.

15. "We hold that the statute [Ind.Code § 12–2–1–18] is constitutionally infirm facially for

*Brooks* has been strictly adhered to within the circuit: *see, e. g., Vargas v. Trainor,* 508 F.2d 485, 489 (7th Cir. 1974), *cert. denied,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975); *Freitag v. Carter,* 489 F.2d 1377, 1383–84 (7th Cir. 1973). In *White v. Roughton,* 530 F.2d 750 (7th Cir. 1976), the unconstitutionality of virtually identical provisions of Illinois' township general assistance program was found to be supported by "overwhelming" evidence. *Id.* at 754.[16] Cf. *also Baker-Chaput v. Cammett,* 406 F.Supp. 1134 (D.N.H.1976).

If the sole purpose for requiring the convocation of a three-judge court is to protect state legislative policies from doom at the hands of a single judge, then there is no reason for requiring such a panel in this case. The statute and the policies embodied therein have had their day before a panel of three judges: the Court of Appeals for the

Seventh Circuit in *Brooks, supra.* No purpose would be served by again presenting the same question to a three-judge court, and 28 U.S.C. §§ 2281 and 2284 do not so require.[17] Accordingly, although the issues raised present issues within the jurisdiction of a three-judge court under 28 U.S.C. § 2281, no three-judge court need be convened, and jurisdiction over the constitutional questions remains with the single judge court.[18]

## Class Certification

Under Count I of the complaint, plaintiff seeks certification of a plaintiff class consisting of "all applicants for and recipients of poor relief in Indiana who have been, are being or will be denied poor relief benefits: a) without being given written notice of the decision made on their applications and the reasons therefor; b) without being given

---

want of due process in failing to provide, inter alia, a pre-termination hearing, an effective opportunity for [the applicant] to defend, and want of due notice of reasons for termination." 485 F.2d at 385.

In *Brooks,* the court below had granted defendant's motion to dismiss for failure of the applicant to exhaust his administrative remedies. The court of appeals reversed, holding that exhaustion was not required under the circumstances. Instead of remanding for the convocation of a three-judge court to hear the merits, however, the court of appeals *sua sponte* determined the constitutional issue and directed that judgment be for plaintiff and that she be reinstated to the welfare rolls. Had the case been one for three judges, the court of appeals would have remanded in order that a three-judge court be convened and would not have decided the constitutional issue itself. *Kendrick v. Walder,* 527 F.2d 44, 46–47 n.3 (7th Cir. 1975). Presumably, the court of appeals determined that the Indiana poor relief laws are so facially unconstitutional that it would have been error for a single judge to convene a three-judge court based on the challenge. *Cf. Wulff v. Singleton,* 508 F.2d 1211, 1214–15 (8th Cir. 1974); *contra, Roe v. Ferguson,* 515 F.2d 279, 284 (6th Cir. 1975). The Supreme Court has granted certiorari in *Wulff* to resolve this question. 422 U.S. 1041, 95 S.Ct. 2655, 45 L.Ed.2d 692 (1975). It may be that prior to *Brooks,* the unconstitutional lack of procedural safeguards was so patent that a three-judge court need not have been convened to enjoin the trustees' actions under the poor law, and *Brooks* seemingly so holds. But whether or not the *Brooks* court was right in this regard,

the substantive holding in *Brooks* now provides a binding prior appellate decision applicable under the rule in *Bailey v. Patterson, supra.*

Although the "prior decisions" referred to in *Bailey, supra,* are not decisions of federal district courts, *Tyson v. Norton,* 390 F.Supp. 545, 572 n.40 (D.Conn.), *aff'd in part, rev'd in part on other grounds,* 523 F.2d 972 (2d Cir. 1975), a district court of three judges is bound by the decisions of the court of appeals for the circuit in which it sits. *Wilczynski v. Harder,* 323 F.Supp. 509, 513 n.8 (D.Conn.1971) (three-judge court.)

16. The *Brooks* panel and the *White* panel were totally different. *But cf. Donahue v. Staunton,* 471 F.2d 475, 480 (7th Cir. 1972), *cert. denied,* 410 U.S. 955, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973), (due process standards found to be implicitly incorporated in state personnel code which allowed discretionary firing; statute therefore not facially unconstitutional).

17. *Cf. Stots v. Media Real Estate Co.,* 355 F.Supp. 240 (E.D.Pa.1973), (prior decision of three-judge court). *But see Bjarsch v. DiFalco,* 300 F.Supp. 960, 967–68 (S.D.N.Y.1969).

18. In determining that the constitutional issues are predetermined by prior decisions, it is necessary to look to the merits in order to determine jurisdiction. Since *Brooks* forecloses any support for the constitutionality of the poor relief laws, the motion to dismiss under Rule 12(b)(6) filed by the State of Indiana is without merit and must be denied.

written notice of their right to appeal said decision; and c) without reference to public, written standards." A corresponding defendant class is proposed, to consist of all township trustees in Indiana who fail to provide the procedures listed above in their processing of poor relief claims.

Under Count II of the complaint, plaintiff proposes a plaintiff class, to consist of "all eligible applicants for poor relief in Fairfield Township, Tippecanoe County, Indiana, who have been, are being or will be denied poor relief shelter assistance to make mortgage payments." There is no defendant class.

### Count I

Each class in Count I is proposed for the purpose of securing a declaration of rights in regard to the constitutionality of the Indiana poor laws; it is apparent that the thrust of such a declaration is that it serve as the basis for injunctive relief rather than damages, *cf. Advisory Committee's Note* to Rule 23(b), 39 F.R.D. 98, 102 (1966); and in this action plaintiff seeks to enjoin defendant Schilling from failing to observe the requested procedures.

From the nature of the relief sought, however, it is clear that the claims for relief in Count I anticipate three distinct sets of plaintiff-defendant classes. Plaintiff's claim that the poor relief statutes are facially unconstitutional involves every township trustee in the state, *whether or not* each such trustee in fact refuses to promulgate standards or give notice of decision and right to appeal. Correspondingly, on the issue of the facial unconstitutionality of the statutes, the class opposing the state-wide defendant class would be a state-wide plaintiff class consisting of all applicants for and recipients of poor relief under the challenged statute.

A somewhat narrower class is proposed as to the claim that the statutes have been unconstitutionally applied. Plaintiff proposes that a conditional certification be made initially to include all township trustees as a defendant class. Thereafter, upon discovery as to the methods each of the

1008 trustees actually employs in processing claims for relief, the class would be narrowed by exclusion of those trustees who, in plaintiff's opinion, adequately promulgated standards and afforded the notice in issue here. Correspondingly, a conditional plaintiff class would be certified, consisting of all applicants of poor relief in the state, thereafter to be narrowed geographically to exclude the applicants and recipients who reside in townships whose trustees were found by plaintiff to afford the procedures requested.

A third class, although not expressly sought, is presented by the claim for equitable relief against defendant Schilling. Plaintiff seeks an order requiring defendant Schilling to "submit a plan for implementation" of the declaratory judgment. Schilling, of course, has no power to implement the judgment beyond the limits of his own township. And within his township, it seems clear that the plan plaintiff prays for is not merely a plan for handling Ms. Hopson's applications in the future; it is to be a plan for handling the claims of all applicants for poor relief in Fairfield Township, Tippecanoe County, Indiana. Accordingly, there is an apparent class claim for equitable relief, the class to consist of all recipients of and applicants for poor relief in Fairfield Township. Plaintiff's claim in this regard is against Schilling alone and not as against a class of township trustees.

To constitute a valid class under Rule 23, Fed.R.Civ.P., the proponent must show that the class meets all the requirements of Rule 23(a) and all the requirements of one or more of the subdivisions of Rule 23(b). Plaintiff seeks to bring this suit under the provisions of Rule 23(b)(2).

### 1. Plaintiff and Defendant Classes Proposed for Challenging the Statute on Its Face

██ a. Numerosity: There are 1008 township trustees in Indiana. Although defendant asserts that joinder is feasible since each trustee's name is known, the rule is not feasibility but practicality. Individual

joinder here would be clearly impractical; hence, the defendant class is sufficiently numerous for purposes of Rule 23(a). The corresponding plaintiff class, to consist of all recipients and applicants for poor relief in Indiana, is patently numerous.

b. Commonality: Both the proposed plaintiff and defendant classes share among their members a common question of law—whether the statutes are facially unconstitutional.

c. Typicality: Each township trustee, as overseer of the poor, is situated similarly to every other trustee in relation to the constitutionality of the poor laws on their face. So, also, the claims of every applicant for or recipient of poor relief are similar to those of the named plaintiff in regard to the constitutionality of the poor relief law on its face.[19]

d. Adequacy of Representation: There is no question that plaintiff possesses the interest necessary to be an effective class representative; there is no hint that the interests will not be diligently promoted by her representation. Defendant protests that he cannot afford an active defense of the action as class representative because of limitations placed on his budget for legal representation. In opposing a declaration of the unconstitutionality of the poor relief laws on their face, the defendant does not claim that he cannot afford a defense against plaintiff's claims against him alone and not as a class representative. If costs of notification are not placed on defendant, no difference in cost is apparent between an individual defense and a defense as class representative. Furthermore, defendant now has the assistance of the State of Indiana, which has intervened as codefendant for the limited purpose of opposing plaintiff's claim as to the unconstitutionality of the statutes on their face. As for each class, there is adequate representation.

e. Rule 23(b)(2): Plaintiff seeks to bring this suit under subdivision (2) of Rule 23(b): "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The declaratory relief sought is, as noted above, of a sort corresponding to injunctive relief in that it is apparent that the judgment is to be implemented by injunction rather than by an action for damages.[20] The Rule 23(b)(2) class is particularly appropriate for the assertion of class-based civil rights.

Although the rule refers to "the party opposing the class," the rule may be extended to cover a defendant class which has acted on grounds generally applicable to a plaintiff class. 3B Moore's Federal Practice ¶ 23.40 (Supp. 1975) at Supp. p. 94. While any particular trustee has not acted or refused to act on any application for assistance submitted by persons in other townships, each trustee exercises his discretion pursuant to a statute which equally affects every applicant for poor relief throughout the state. Since (in this instance) it is the statute on its face that is being challenged, the action or refusal to act which is the touchstone for subdivision (2) consists of defendant's exercising the office of overseer of the poor. The defendant *class,* of which defendant is representative, almost by definition has acted on grounds generally applicable to plaintiff *class* in regard to plaintiff's claim that the poor relief laws are unconstitutional on their face.

---

**19.** Since plaintiff's challenge is to the lack of any procedural protection afforded by the statute, it is immaterial that other members of the plaintiff class do not share plaintiff's need for shelter payments. *All* applicants for poor relief benefits—food, clothing, water, etc.—are similarly treated under Ind.Code § 12–2–1–10(b) and are therefore similarly situated in regard to the procedures anticipated under the statutes in question.

**20.** Injunctive relief against a defendant class presents certain problems, *see* 3B Moore's Federal Practice ¶ 23.40 n.17 (Supp. 1975); *id.* following n.26 (Supp. 1975) at Supp. p. 94, which need not be considered here. Plaintiff seeks only declaratory relief against the defendant class.

Although Rule 23(b)(2) may well be satisfied by a class-versus-class analysis, a related inquiry must be made into whether in thus establishing opposing classes there is a proper "case or controversy" which may be adjudicated in federal court. No trustee exercises his discretion in relation to a state-wide class of poor relief applicants; rather, each trustee's actions as overseer of the poor affect only those applicants within his jurisdiction. There is here alleged no conspiracy or agreement among the many trustees; hence, in an ordinary case any individual applicant could state a cause only against his particular township trustee.

Here, however, the trustees share among themselves a "juridical link," see *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973); *Mudd v. Busse*, 68 F.R.D. 522, 527 (N.D.Ind.1975), relevant to the nature of plaintiff's claim here, upon which a class action may be founded. As noted in *Mudd v. Busse, supra,* a sufficient "juridical link" "would most often be found in instances where all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute . . . which is alleged to be unconstitutional. In such a case an action against the defendant class is simply a procedural alternative to challenging the constitutionality of a statute by suit against the state directly—a procedural device perhaps sometimes required by the legal fictions surrounding the interplay in the case law between the Eleventh Amendment and the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714. . . ." *Id.,* 68 F.R.D. at 527–28. *See also* cases cited *id.* at 528; *and see Paxman v. Wilkerson,* 390 F.Supp. 442 (E.D.Va.1975).

In the challenge to the constitutionality of the poor laws on their face, the township trustees are bound by a common juridical link—their station *ex officio* as overseers of the poor and as principal administrators of the poor relief laws. Accordingly, a defendant class under Rule 23(b)(2) consisting of all township trustees in Indiana is appropriate and will be certified under the claim that the statutes involved are facially unconstitutional.

The definition of the defendant class above immediately suggests the bounds of the corresponding plaintiff class: all recipients of and applicants for poor relief in Indiana. This class will be certified under the claim of facial unconstitutionality contained in Count I of the complaint.

### 2. *Plaintiff and Defendant Classes Proposed for Challenging the Statute as Applied*

Plaintiff asserts that both a defendant class and a plaintiff class are appropriate to determine the constitutionality of the procedures actually used by the township trustees in administering the poor laws. In this regard, plaintiff seeks a conditional certification of a defendant class to consist of all trustees, to be narrowed after discovery to include only those trustees whose procedures fall short of those requested. At the hearing, it was shown that in fact the various trustees do exercise the discretion allowed by the poor relief laws; that some few trustees have promulgated written standards, others use written standards not generally available for inspection by the public, some employ general and vague standards, some trustees never provide reasons for denial of benefits, some provide written reasons only when benefits are denied in toto, some provide written reasons when benefits are denied in whole or in part, some give reasons orally but not in writing, some employ a standard form proposed by the state board of accounts, others state their reasons in a letter written to the applicant, some trustees never advise the applicant of his right to appeal, others do so only when no benefits are given, some use a standard form, some inform the applicant of his rights orally, some provide notice and statement of reasons only when requested to do so, and others provide notice and statement of reasons automatically.

As counsel for plaintiff explained at hearing, however, the relief sought under

the theory of unconstitutional application would be substantially the same as that sought under the theory of unconstitutionality on the face of the statute. In either case, plaintiff seeks a declaration that promulgation of standards and issuance of certain notices are constitutionally required. Inquiry into the actual practices of the trustees would be necessary only if the statute is *not* facially unconstitutional; otherwise, plaintiff can receive as effective a declaration by challenging the statute on its face as by challenging the practices the statute appears to promote. Under these circumstances, it is better to postpone consideration of the class certification under the statute "as applied." If plaintiff as representative of a class based on the facial invalidity of the statute is successful on the merits, the relief sought as representative of the "as applied" class would be largely duplicative, and the constitutional difficulties inherent in a "case or controversy" determination could be avoided. Accordingly, no certification will be made in regard to a proposed class based on the unconstitutional application of the poor laws, with the understanding that plaintiff may upon proper motion renew the request for certification under appropriate circumstances.

### 3. Plaintiff Class Proposed for Invoking Equitable Relief Against Defendant Schilling

■ Plaintiff seeks an order requiring defendant Schilling to submit a plan for implementation of any declaratory judgment issuing in this cause. Implicitly, this plan is to run for the benefit of all applicants for and recipients of poor relief in Fairfield Township.

The class-based equitable relief sought as implementation of a declaratory judgment is a prime example of a claim justifying class certification under Rule 23(b)(2), *see Advisory Committee's Note,* 39 F.R.D. 98, 102 (1966). Accordingly, this plaintiff class will be certified for purposes of the equitable relief sought under Count I of the complaint.

### Count II

Under Count II of the complaint, plaintiff seeks declaratory and injunctive relief against defendant Schilling on the basis of defendant's refusal to pay plaintiff's mortgage payments as "shelter" allowances under Ind.Code § 12–2–1–10(b). That statute allows the trustee to pay "shelter" expenses. Defendant regularly pays for an applicant's rental obligations, but, according to the complaint, defendant refuses to pay an applicant's mortgage obligations. Plaintiff seeks a declaration that defendant's practice violates the provisions of Section 12–2–1–10(b) and that such practice violates the equal protection clause of the Fourteenth Amendment. Jurisdiction over the constitutional claim is placed under 42 U.S.C. § 1983 and 28 U.S.C. § 1343; jurisdiction to determine the state statutory claim is placed under the pendent jurisdiction of the court.

### Class Action Status

■ Plaintiff seeks certification under Count II of a plaintiff class to consist of all applicants for poor relief in Fairfield Township who were, are, or will be denied payment of mortgage obligations under the poor relief laws. As a precondition to certification under Rule 23(b)(2), plaintiff must show that the proposed class is sufficiently numerous that joinder is impractical. In this case, however, it appears that plaintiff's situation is unique. According to testimony given at the hearing, only one other person has ever applied for relief from mortgage payments, and that application was granted. Although the definition of the proposed class certainly admits of a class so numerous that joinder would be impractical, where plaintiff cannot point to any other individual who actually is a member of the class proposed, there simply is no class at all.

Accordingly, no class will be certified under Count II of the complaint, and defendant's motion to dismiss plaintiff's claims as representative of a purported class under Count II of the complaint will be granted.

### Abstention

■ Where plaintiff's constitutional claim is premised upon an unsettled question of state law, it is appropriate for the federal court to abstain from deciding the constitutional issue until a state court has first had an opportunity to clarify the underlying state law question. *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). "Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute the meaning of which is unclear under state law." *Harris County Comm'rs Ct. v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975).

In this case, plaintiff seeks a declaration that defendant's refusal to pay mortgage payments denies her the equal protection of the laws. She does not insist that she has a direct constitutional right to the payment of mortgage obligations by the state; rather, plaintiff argues that it is impermissible for the trustee to construe the word "shelter" in Ind.Code § 12–2–1–10(b) to include rent but not to include mortgage payments.

■ The word "shelter" as used in the statute has never been construed in a reported decision by an Indiana court. The term is certainly capable of an interpretation which would cover mortgage payments, yet it may allow of a reasonable basis for distinction. If in fact a distinction exists under the Indiana statute between rent obligations and mortgage obligations, an interpretation by a state court declaring the meaning of the statute in light of its legislative intent would supply a necessary element of the constitutional analysis under the equal protection clause—the legislative purpose in establishing the classification.[21] A clarification would also reveal the nature of the federal constitutional challenge— whether the classification is one mandated by the statute, merely allowed by the statute, or forbidden by the statute. Further, it is possible that a state court might con-

---

21. Because it is apparent that a clarification of the statute would give needed form to the underlying state law contentions upon which the constitutional challenge is built, it is unnecessary to decide whether abstention is appropriate in order to allow plaintiff to secure a definitive ruling on her pendent state law grounds for relief. In this suit, plaintiff contends that the denial of mortgage payments violates the state statute itself. She therefore seeks, in the alternative, injunctive relief based on the pendent state law claim. Abstention to allow a state court to rule on this pendent claim would, of course, possibly avoid the necessity of ruling on the federal constitutional grounds for relief. The availability of an independent state law grounds for relief seemingly does not warrant abstention, however. *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *see Harris Co. Comm'rs Ct. v. Moore, supra,* 420 U.S. 77, 95 S.Ct. 870, 876 n.8. Nor may the federal court abstain to allow the federal plaintiff to turn to a state forum for vindication of his federal rights. *Zwickler v. Koota,* 389 U.S. 241, 251–52, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Abstention to allow the federal plaintiff to pursue his purely state law remedies is, in the civil rights context, analogous to the exhaustion doctrine. Within this context, *McNeese v. Board of Education,* 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963) teaches: "[P]etitioners assert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment. It is immaterial whether respondents' conduct is legal or illegal as a matter of state law. . . . Such claims are entitled to be adjudicated in the federal courts." *See also Wisconsin v. Constantineau, supra. And see Nickerson v. Thomson,* 504 F.2d 813 (7th Cir. 1974). Recently, however, it appears that the availability of "an adequate independent state remedy" "which is capable of superseding altogether the federal question" is good grounds for abstention. *Lewellyn v. Gerhardt,* 513 F.2d 184, 187 & n.2 (7th Cir. 1975), *citing Murdock v. City of Memphis,* 87 U.S. (20 Wall.) 590, 22 L.Ed. 429 (1875). The citation seems misplaced, for *Murdock* dealt with appellate jurisdiction arising from a federal "question," *see* 28 U.S.C. § 1257, while original jurisdiction under 28 U.S.C. § 1343 extends to "any civil action." The rule in *Lewellyn, supra,* commends itself, however, when plaintiff himself has asserted both state law and federal grounds for equitable relief. *Cf. Rasmussen v. City of Lake Forest, Illinois,* 404 F.Supp. 148, 152–53 (N.D.Ill.1975). In light of the seeming conflict between *Nickerson* and *Lewellyn,* however, it is unclear whether in this case plaintiff's pendent state claim alone justifies federal abstention; it is sufficient that the state law claims underlying the federal constitutional claim may, upon clarification, moot or alter the federal claim. *See Boehning v. Indiana State Employees Ass'n,* 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975); *Palermo v. Sendak,* 382 F.Supp. 1387 (N.D.Ind.1974).

strue "shelter" to allow mortgage payments under certain circumstances only. Accordingly, the court will retain jurisdiction over Count II of the complaint but will withhold consideration of the issues therein raised until plaintiff has sought clarification of the state law issues in state court. *Cf. England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Palermo v. Sendak,* 382 F.Supp. 1387, 1393 n.3 (N.D.Ind.1974).

### Notice

Pursuant to Rule 23(d)(2), Fed.R.Civ.P., it is appropriate that each township trustee be made aware of the pendency of this cause, of the issues presented by Count I of the complaint, of the status of the named plaintiff and defendant as respective class representatives, and of other matters tending to fully disclose to each member of the defendant class the potential of a binding adjudication as to the issues raised by Count I. Plaintiff has agreed to undertake such notice and to shoulder the cost of notifying each township trustee. Accordingly, within thirty (30) days of entry of the order herein, plaintiff is to submit to the court her proposed form of notice to absent members of defendant class.

No notice need be distributed or published as to the plaintiff classes certified under Count I.[22]

### Outstanding Motions

On February 10, 1976, plaintiff filed her "Motion for Order Determining Classes and Allowing Discovery from Absent Members of Defendant Class." The motion for determination of classes is treated above; the motion for discovery will be denied. The only defendant class certified, the class consisting of all township trustees under Count I, was found to be appropriate because of the juridical link posited by plaintiff's theory that the statutes are unconstitutional on their face. Such a challenge to the facial validity of statutes does not require any evidence of the actual practices of the individual trustees. Accordingly, determination of the practices of the absent class members would be irrelevant, and the discovery sought is not needed for any purpose under this suit.[23] Plaintiff's motion will ne denied.

On June 4, 1976, intervening defendant State of Indiana moved to dismiss plaintiff's complaint insofar as it challenges the facial unconstitutionality of the poor relief laws. Defendant's memorandum in support fails to mention the decision of the Seventh Circuit in *Brooks v. Center Township,* 485 F.2d 383 (7th Cir. 1973), *cert. denied, Indiana v. United States Court of Appeals for Seventh Circuit,* 415 U.S. 911, 94 S.Ct. 1455, 39 L.Ed.2d 496 (1974). Unless that case can be distinguished, it appears that *Brooks* affirmatively forecloses consideration of defendant's assertion that the statutes may be facially constitutional.

At hearing, certain affidavits and depositions were tendered over general objection of defendants. Because counsel for defend-

**22.** *Schrader v. Selective Service System Local Bd. No. 76 of Wisconsin,* 470 F.2d 73 (7th Cir.), *cert. denied,* 409 U.S. 1085, 93 S.Ct. 689, 34 L.Ed.2d 672 (1972), appears to require notice to all class members under any subdivision of Rule 23(b). The author of this memorandum of decision dissented in that case, 470 F.2d at 77. Subsequently, the Supreme Court in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 n.14, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), noted that the notice requirements of subsection (c)(2) are applicable only to subdivision (b)(3) suits and not those brought under subdivision (b)(2). *Schrader* appears to have been severely limited, if not by *Eisen,* then by the Seventh Circuit's decisions in *Bijeol v. Benson,* 513 F.2d 965, 968 n.3 (7th Cir. 1975), and in *Jimenez v.*

*Weinberger,* 523 F.2d 689, 700 n.25 (7th Cir. 1975), *pet. for cert. filed,* 44 U.S.L.W. 3522 (Feb. 5, 1976). *See also Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 256–57 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). In any event, notification was at least feasible in *Schrader* because of the centrally maintained list of Selective Service registrants. In this case, the class of "poor relief applicants and recipients" is not self-identifying, and the names of applicants (as opposed to recipients) are not necessarily maintained on written records by trustees.

**23.** Should it be necessary to consider plaintiff's challenge to the statutes as applied, the motion for discovery could properly be renewed.

ant and for intervening defendant had not, in every instance, had sufficient time to examine each affidavit or deposition tendered, the court allowed the tender conditionally, subject to written objection filed within ten (10) days following hearing. No written objections have been received. Accordingly, the affidavits will be admitted, and the depositions, treated as affidavits, will likewise be admitted.

## ORDER

Accordingly, plaintiff's motion for determination of classes is granted in part and, under Count I of the complaint, the following classes are hereby certified pursuant to Rule 23, Fed.R.Civ.P.: As to the claim for declaratory relief that the poor relief laws are unconstitutional on their face, a plaintiff class consisting of all applicants for and recipients of poor relief in Indiana, represented by plaintiff Hopson, and a defendant class, represented by defendant Schilling, consisting of all township trustees in Indiana.

As for equitable relief sought under Count I of the complaint, a plaintiff class is hereby certified, to consist of all applicants for and recipients of poor relief in Fairfield Township, Tippecanoe County, Indiana; this class to be represented by plaintiff Hopson.

Determination of other classes under Count I is stayed pending consideration on the merits of the claims made by the classes herein certified.

Plaintiff will submit for approval of the court, within thirty (30) days of the entry of this order, a proposed form of notice to be distributed to absent members of the defendant class certified under Count I. Copies of the proposed notices shall be served on defendants at the same time such proposed notice is filed with the court, and defendants shall have ten (10) days in which to file specific objections to the form of notice. Cost of preparation and distribution of notice is to be borne by plaintiff. No notice is to be distributed without prior approval of the court.

Plaintiff's motion for determination of classes is in all other respects denied.

Defendant's motion to dismiss is granted insofar as plaintiffs seeks recovery under Count II of her complaint as class representative, and plaintiff's claims *as class representative* under Count II of the complaint are hereby dismissed. In all other respects, defendant's motion is denied.

Consideration of plaintiff's claims under Count II of the complaint is stayed pending submission of the state law issues there involved to a state court of competent jurisdiction for clarification; provided, however, that unless waived, this court retains jurisdiction over the federal questions involved. Consideration of the propriety or necessity of accepting the pendent jurisdiction claims set forth in Count II is postponed until decision has been issued by the state court on plaintiff's state law questions.

Plaintiff's motion for discovery from absent class members is denied at this time.

The motion by intervening defendant to dismiss for failure to state a claim upon which relief can be granted is denied.

Plaintiff's affidavits are admitted into evidence.

The depositions offered by plaintiff are treated as affidavits and, as such, are admitted into evidence.